IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEPHEN HENDERSON,           §
                             §
                Plaintiff,   §
                             § Civil Action No. 3:10-CV-0589-D
VS.                          §
                             §
MICHAEL J. ASTRUE,           §
COMMISSIONER OF SOCIAL       §
SECURITY,                    §
                             §
                Defendant.   §

<u>MEMORANDUM OPINION</u>

Plaintiff Stephen Henderson ("Henderson") brings this action
under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C.
§ 405(g), for judicial review of the final decision of the
Commissioner of Social Security ("Commissioner") denying his
application for supplemental security income under title XVI of the
Act. For the reasons that follow, the Commissioner's decision is
affirmed.

I

Henderson was 44 years old at the time he applied for
supplemental security income and was classified under 20 C.F.R.
§ 404.1563 (2011) as a "younger person." He has an eighth or
ninth-grade education,[1] and he previously worked installing and
repairing lawn sprinklers. Since his onset date, June 17, 2005, he

_____

[1]At the hearing, Henderson testified that eighth grade was the
highest level of education he completed, R. 39, but in his
disability report, he reported that ninth grade was the highest
level of education he completed, R. 207.

has not engaged in any substantial gainful activity. Henderson filed an application for supplemental security income on January 9, 2006, alleging that he became disabled on June 17, 2005 due to bipolar disorder, depression, back and shoulder problems, and leg pain. His claims were denied initially and on reconsideration. He timely requested a hearing before an administrative law judge ("ALJ"), and the ALJ found that Henderson is not disabled.

In her decision, the ALJ followed the five-step sequential process of 20 C.F.R. § 416.920(a) (2011) for determining whether Henderson is disabled. At step one, the ALJ found that Henderson has not engaged in substantial gainful activity since his application date, January 9, 2006. At step two, she found that Henderson has severe impairments of "bilateral degenerative disc disease of the shoulders, chronic pain, and depression[.]" R. 23. The ALJ found at step three that Henderson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. She found that Henderson has mild restriction in activities of daily living and moderate difficulties in social functioning. R. 24. Regarding concentration, persistence, or pace, the ALJ found that Henderson has moderate difficulties, including poor memory, difficulty recalling dates and times, and difficulty completing simple arithmetic and serial tasks. *Id.* The ALJ also found that Henderson's residual functional capacity

("RFC") would allow him to perform work while lifting and carrying 20 pounds occasionally and 10 pounds frequently and that he could only perform negligible overhead reaching. Concerning Henderson's mental status, the ALJ found that he is "limited to simple work in which interaction with the public and co-workers is incidental to job performance." *Id.* At step four, the ALJ found that Henderson cannot perform any past relevant work as a sprinkler installer and repairer. The ALJ found at step five that Henderson is able to perform jobs like housekeeper, bakery worker, and garment sorter. R. 29. The ALJ thus found that Henderson is not disabled.

Henderson sought review by the Appeals Council, and he submitted additional supporting evidence. The Council denied review, and the ALJ's decision became the final decision of the Commissioner. Henderson seeks judicial review on the following grounds: (1) the Appeals Council failed to properly consider new and material evidence; (2) the ALJ improperly relied on her lay judgment instead of medical opinions from treating, examining, state agency, and testifying physicians; and (3) the ALJ applied the wrong severe impairment standard and thus failed to incorporate the correct functional limitations into her determination of Henderson's RFC.

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*,

919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett,* 67 F.3d at 563; *Martinez,* 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2011). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and

fairly relating to an applicant's claim for disability benefits."
*Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty,
[the] decision is not substantially justified." *Id.* Reversal of
the ALJ's decision is appropriate, however, "only if the applicant
shows that he was prejudiced." *Id.* The court will not overturn a
procedurally imperfect administrative ruling unless the substantive
rights of a party have been prejudiced. *See Smith v. Chater*, 962
F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

## III

Henderson first contends that the Appeals Council failed to
properly consider new and material evidence consisting of more than
250 pages of treatment records and that the Appeals Council
improperly failed to remand the case to the ALJ in light of the new
evidence.

## A

The court first addresses whether the Appeals Council
committed legal error by failing to properly consider the new
evidence.[2] Henderson submitted the new evidence——presented as
Exhibits 18F and 19F——to the Appeals Council. R. 4. In its denial
of Henderson's request for review, the Appeals Council stated that

---

[2]Henderson does not explicitly argue that the Appeals Council
committed legal error. But because the court is to review the
Commissioner's decision to determine whether substantial evidence
supports the decision and whether the Commissioner applied the
proper legal standards to evaluate the evidence, *see, e.g., Ripley*,
67 F.3d at 555, the court will address Henderson's argument under
both prongs.

it had received the new evidence, considered it, and found that it did not provide a basis for changing the ALJ's decision. R. 2-4. Henderson argues that if new evidence is relevant to a claimed disability period, the Appeals Council's failure to specifically address that evidence is reversible error.

The Appeals Council's failure to take into account new and material evidence submitted to it is legal error. *See Keys v. Barnhart*, 347 F.3d 990, 993 (7th Cir. 2003); *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). And "[n]o deference is afforded the Commissioner's legal determinations; review of legal issues is *de novo*." *Delgado v. Barnhart*, 305 F.Supp.2d 704, 708 (S.D. Tex. 2004) (citing *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. Unit A Jan. 1981)).

Henderson cites *Hines v. Barnhart*, 2003 WL 23323615 (N.D. Tex. June 5) (Bleil, J.), *rec. adopted*, (N.D. Tex. July 8, 2003) (Means, J.), for the proposition that the Appeals Council's failure to specifically address new evidence relevant to the disability period is reversible error. *See id*. at *5. But in *Hines* the court noted that the Appeals Council did not specifically acknowledge receipt or consideration of the new evidence. *Id.* The Commissioner contends that the Appeals Council considered the new evidence but refused to grant review of the ALJ's decision. The record supports this contention. *See* R. 1-4; 1069-1323.

Nor does the Appeals Council's failure to explain its decision

to deny review despite the new evidence require reversal. "It is not appropriate to automatically reverse merely because the Appeals Council failed to explain the weight it afforded evidence first presented to it." *Metcalf ex rel. ANM v. U.S. Comm'r Soc. Sec. Admin.*, 2009 WL 5174368, at *5 (W.D. La. Dec. 18, 2009). "[I]n the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005) ("*Higginbotham I*"), and *Higginbotham v. Barnhart*, 163 Fed. Appx. 279 (5th Cir. 2006) (per curiam) ("*Higginbotham II*")). Rather, the district court should "review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." *Higginbotham II*, 163 Fed. Appx. at 281 (addressing review by court of appeals).[3] *Id.* Accordingly, the court holds

---

[3]Henderson argues that a claimant need only raise a reasonable possibility that the additional evidence would have changed the outcome of the Commissioner's decision, and he cites *Ripley*, 67 F.3d at 555, in support. This standard applies, however, when the claimant presents new evidence to the district court that was not previously in the record. *See Jones v. Astrue*, 228 Fed. Appx. 403, 406-07 (5th Cir. 2007) (per curiam). In this case, no new evidence has been presented to this court, and the Appeals Council stated that it considered all the evidence contained in the record as of the time of its decision.

Although not pertinent here, the court notes that the standard stated in *Ripley*, 67 F.3d at 555—that a claimant must raise a reasonable *probability* that the additional evidence would have

that the Appeals Council did not commit legal error when it failed to specifically address Henderson's new evidence.

B

Nor did the Appeals Council commit legal error[4] by failing to remand the case to the ALJ in light of the new evidence.

Under the regulations, the Appeals Council is not required to remand a decision to the ALJ when a claimant presents new evidence. It may "deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an [ALJ]." 20 C.F.R. § 404.967 (2011). If the Appeals Council grants the claimant's request for review, it may "affirm, modify or reverse the [ALJ's decision]" or "remand the case to an [ALJ]." 20 C.F.R. § 404.979 (2011). When a claimant seeks review based on new evidence, the Appeals Council should review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence, which includes any new and material evidence relating to the period on or before the date of the hearing before the ALJ. *See* 20 C.F.R. § 404.970 (2011). In this case, the Appeals Council denied review and found that the new evidence did not provide a basis for changing the ALJ's decision.

_____

changed the outcome of the Commissioner's decision——appears to be a material rephrasing of the reasonable *possibility* standard found in earlier cases. *See Chaney v. Schweiker*, 659 F.2d 676, 679 & n.4 (5th Cir. Oct. 1981) (per curiam); *see also Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

[4]*See supra* note 2.

R. 2.

The proper inquiry in the district court is whether, in light of the new evidence, the Commissioner's findings are still supported by substantial evidence. *Higginbotham II*, 163 Fed. Appx. at 282. As the district court explained in *Primm v. Astrue*:

> Plaintiff cites [*Higginbotham I*] in support of his argument that the Appeals Council committed reversible error in failing to remand plaintiff's claim upon consideration of the newly submitted evidence. However, [*Higginbotham I*] does not stand for the proposition that, where new evidence is offered to the Appeals Council, the Council must remand the claim to the ALJ. Rather, the Fifth Circuit held that newly submitted evidence is considered part of the Commissioner's "final decision," and should therefore be considered by the District Court on appeal.

*Primm v. Astrue*, 2010 WL 5677051, at *3 (W.D. La. Nov. 30, 2010) (citing *Higginbotham I*, 405 F.3d at 335, 337) (internal citations omitted). The court therefore holds that the Appeals Council did not commit legal error by failing to remand the case to the ALJ for consideration of the new evidence.

C

Henderson contends that the ALJ's decision is not supported by substantial evidence in light of the new evidence submitted to the Appeals Council.

The Appeals Council should grant review "if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

"[E]vidence submitted for the first time to the Appeals Council is part of the record on appeal[.]" *Higginbotham I*, 405 F.3d at 337. When the claimant submits new evidence and the Appeals Council denies review after considering the evidence, "the Commissioner's final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id.* at 336 (internal quotation marks and citation omitted). The court must determine whether, in light of the new evidence, the Commissioner's findings are still supported by substantial evidence. *Higginbotham II*, 163 Fed. Appx. at 282.

Henderson asserts that the new evidence contradicts the ALJ's findings that (1) a doctor's examination may have occurred during a period of Henderson's noncompliance with medication; (2) Henderson experienced no episodes of decompensation; (3) Henderson can care for his personal needs; and (4) Henderson's mental symptoms are not credible to the extent they are inconsistent with the ALJ's RFC findings. The Commissioner responds that the new evidence would not have changed the ALJ's decision.

The ALJ found that Henderson is limited to simple work in which interaction with the public and coworkers is incidental to job performance. R. 24. In support of this finding, the ALJ referred to an examination of Henderson performed by Daniel Pearson, M.D. ("Dr. Pearson"). R. 27. The ALJ considered Dr. Pearson's medical conclusions, but noted that because the medical

record did not otherwise support Dr. Pearson's findings, and because Henderson admitted to noncompliance with his medications, Dr. Pearson's examination may have occurred during a period of noncompliance. *Id.* Henderson submitted medical records to the Appeals Council that were not provided to the ALJ. He cites a medical record that indicates that even when he was compliant with his medications, he still suffered symptoms. R. 1175. But this new evidence does not squarely address whether Dr. Pearson's examination may have occurred during a period of noncompliance. Moreover, the ALJ also relied on other evidence to determine Henderson's mental limitations, including records from Henderson's psychiatrist and Henderson's daily activities.

The ALJ also found that Henderson has experienced no episodes of decompensation of extended duration. R. 24. Henderson asserts that medical records show that he has experienced episodes of decompensation. But the ALJ considered the evidence that Henderson cites. It is not new evidence submitted for the first time to the Appeals Council.

The ALJ noted that Henderson testified that he is able to care for his personal needs. R. 25. Henderson argues that there is new evidence of his poor personal grooming. But the part of the record Henderson cites is a medical record indicating only that Henderson reported that he does not take daily showers and that the medical provider set education of proper hygiene as a goal for him. R.

1308. The ALJ made no specific finding that, as a result of this new evidence, is no longer supported by substantial evidence.

Finally, the ALJ found that Henderson's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible to the extent they are inconsistent with her RFC assessment. R. 26. Henderson argues that the ALJ's finding is based on the lack of medical records after December 2007. The court disagrees. The lack of records after December 2007 was one of several grounds on which the ALJ based this finding. Henderson has pointed to no specific evidence that would deprive the ALJ's finding on Henderson's credibility of support under the substantial evidence standard.

The court therefore holds that the Appeals Council properly considered the new evidence on which Henderson relies and that, taking into account the new evidence, the ALJ's decision is supported by substantial evidence. The court therefore declines to grant relief on the basis of Henderson's first ground.

IV

Henderson maintains that the ALJ improperly relied on her lay judgment instead of medical opinions from treating, examining, state agency, and testifying physicians.

A

Henderson contends that the ALJ failed to give controlling weight to treating physician opinions. Because a treating

- 14 -

physician is "familiar with the claimant's impairments, treatments and responses," his opinion "will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (internal quotation marks, citation, and ellipsis omitted).

The ALJ found that "[t]here is no treating source opinion in evidence that supports a finding that [Henderson] was disabled at any time since his alleged onset date." R. 28. Henderson argues that the opinions offered by Carlton Walker ("Walker") and Maurice Fayomi ("Fayomi")——neither of whom is a psychiatrist or physician——should be given the same weight as a treating physician's opinion.

20 C.F.R. § 416.927(a)(2) (2011) addresses how the ALJ should evaluate medical opinions and provides that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[.]" *Id.* "Acceptable medical sources" include licensed physicians, psychologists, optometrists, podiatrists, and speech pathologists. *See* 20 C.F.R. § 416.913(a) (2011). Walker holds a bachelor's degree, and Fayomi holds a master's degree, but Henderson does not allege that either is a physician. Rather, Henderson argues that because Walker and Fayomi are qualified mental health professionals who are supervised by physicians, their

opinions should be given controlling weight.  Henderson cites no
support, and the court has found none, for this contention.  The
court therefore finds no basis to disturb the ALJ's determination
of the weight to be given the opinions of Fayomi and Walker.

B

Henderson also argues that the ALJ did not give proper weight
to consulting physician Robert A. Harris, Jr., M.D. ("Dr. Harris"),
an internist, or consulting psychiatrist Dr. Pearson, both of whom
examined Henderson.  In determining the weight to give to a non-
treating medical opinion, the ALJ should consider the length of the
treatment relationship, the nature and extent of the treatment
relationship, the supportability of the opinion, the consistency of
the opinion with the record, specialization of the medical source,
and other factors.  *See* 20 C.F.R. § 416.927(d).  Henderson's
argument apparently is based on what the ALJ included in her RFC
findings.  Henderson argues that, because the ALJ did not assign
standing, walking, or sitting limitations or list the same severe
impairments as the doctors opined, the ALJ improperly weighed their
opinions.

The ALJ discussed the opinions of Drs. Pearson and Harris in
her findings.  She noted that Dr. Harris observed that Henderson
walked with a slight limp but did not require a cane or other
assistive device; that Henderson had normal reflexes and was able
to squat and bend with some discomfort; and that X-rays of

Henderson's lumbar spine were essentially normal. R. 26. The references regarding sitting and standing limitations are those of Henderson, not Dr. Harris, in the part of the record that Henderson cites. R. 544. Dr. Harris diagnosed Henderson with manic-depressive disorder, recurrent dislocation of the left shoulder, and low back pain, and mentioned that heavy work, like that of a sprinkler installer, is no longer feasible. Dr. Harris also specifically noted that Henderson has chronic pain, which the ALJ specifically found.

The ALJ also discussed Dr. Pearson's opinion. She noted that Dr. Pearson diagnosed Henderson with bipolar disorder, which he determined to be primarily depression, and that he assigned Henderson a Global Assessment of Functioning ("GAF") score of 50. The ALJ specifically took issue with the GAF finding, noting that "[a] review of the medical evidence of record does not support this level of functional limitation." R. 27. Henderson also points to the ALJ's statement that Dr. Pearson's evaluation may have taken place during a period of noncompliance. But the ALJ did not specify that potential noncompliance was the sole (or even the primary) reason that she discounted Dr. Pearson's opinion. Rather, she found that the other medical evidence did not support Dr. Pearson's findings. Regardless, there is no basis to conclude that the ALJ failed to take into account the required factors in determining the weight to give the opinions.

Henderson contends that the ALJ did not properly consider the state agency medical opinions under 20 C.F.R. § 404.1527(d) (2011). The court disagrees.  The ALJ noted that the state agency doctors' findings comported with her finding of "not disabled," and she gave these opinions "some weight."  R. 28.  Thus Henderson's contention that the ALJ did not explain the weight given to the state agency doctors' opinions is unfounded.

The record in fact supports the conclusions that these physicians found what the ALJ found in her RFC determination.  They determined that Henderson can lift 20 pounds maximum, frequently lift 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and unlimited push and pull. It appears that the doctors gave Henderson the maximum level of sitting and standing available on the form, and did not say that he was limited in upper extremities at all.  They also found Henderson to be moderately limited (level 2 out of 5) in his ability to interact with the public and to maintain socially appropriate behavior.  R. 561.  Furthermore, in their functional capacity assessment, they noted that Henderson is able to interact appropriately with others.  R. 562.  While Henderson is correct that the state agency doctors confirmed his bipolar diagnosis, they also noted that he has only mild difficulties in social functioning and mild restriction of daily living activities.  R. 788.  The

court thus holds that, even assuming *arguendo* that the ALJ committed procedural error, her findings are supported by substantial evidence, and any error is harmless and not reversible.

D

Henderson also argues that, after he submitted new evidence, the ALJ failed to update the non-examining medical expert, Barbara Felkins, M.D., who was present and testified at the hearing. Henderson cites no authority for the proposition that the ALJ must recall a medical expert to examine new evidence submitted after the hearing. The Commissioner argues that it was Henderson's burden to present evidence of his impairment, and, without excuse, he failed to introduce the pertinent exhibits at the hearing. The Commissioner also posits that an ALJ may, but is not required to, call a medical expert, citing 20 C.F.R. § 416.927(f)(2)(iii): "[ALJs] are responsible for reviewing the evidence and making findings of fact and conclusions of law . . . [ALJs] may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s)[.]"

As the court has already held, there is substantial evidence to support the ALJ's finding of no disability and her RFC determination. Henderson has not established that the ALJ was required to recall a medical expert, and, even if she was, her findings are supported by substantial evidence.

- 19 -

V

Finally, Henderson maintains that the ALJ erred in her severe impairment findings by stating both the standard set out in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), and the standard of 20 C.F.R. § 416.920(c).[5] The ALJ found that Henderson has the severe impairments of bilateral degenerative disc disease of the shoulders, chronic pain, and depression. R. 23.

*Stone* makes clear that the ALJ must explicitly refer to *Stone*, refer to another opinion of the same effect, or include an express statement construing 20 C.F.R. § 404.1520(c) in accordance with *Stone*. *Stone*, 752 F.2d at 1106. In this case, the ALJ mentioned the standard of 20 C.F.R. § 416.920(c) in the "applicable law" section of her decision, and she cited *Stone* when listing the severe impairments she had found. R. 22-23. Henderson argues that because it is unclear which standard the ALJ followed, the court must remand the case. The court disagrees.

In *LeBlanc v. Chater*, 83 F.3d 419, 1996 WL 197501 (5th Cir. 1996) (per curiam) (unpublished opinion), the panel held that "where the evidence supports the ALJ's findings under either standard, it is imprudent to remand[.]" *LeBlanc*, 1996 WL 197501, at *2. Under *Stone* "[a]n impairment can be considered as not

---

[5]20 C.F.R. § 416.920(c) lists the same standard as 20 C.F.R. § 404.1520(c)). Section 404.1520(c) applies generally to applications for social security benefits, and § 416.920(c) applies specifically to applications for supplemental security income.

severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" *Stone*, 752 F.2d at 1101 (internal quotation marks omitted). Under 20 C.F.R. § 416.920(c), a severe impairment is one that significantly limits an individual's physical or mental ability to do basic work.

Henderson argues that, under *Stone*, the ALJ should have: (1) found a severe impairment due to chronic obstructive pulmonary disease ("COPD"); (2) listed Henderson's upper extremity problems as degenerative joint disease, tendinopathy, chondromalacia, and radiating pain rather than bilateral degenerative disc disease of the shoulders; (3) found bipolar I disorder instead of depression as a severe impairment; and (4) found a severe impairment related to Henderson's low back and radiating leg pain.

Under either standard, there is substantial evidence to support the ALJ's severe impairment findings. As the Commissioner points out, Henderson did not assert that he had COPD in his social security application or raise it at the hearing. The ALJ found severe impairments related to the other three conditions that Henderson listed. It therefore makes no difference whether the ALJ applied *Stone* or 20 C.F.R. § 416.920(c), as long as she applied at least one. For example, if the ALJ found depression to be a severe impairment under either test, she would also have found bipolar I disease to be a severe impairment under that same test had she

found evidence to support such a finding.  In other words, using the *Stone* test instead of 20 C.F.R. § 416.920(c) does not result in finding *more severe* conditions than the ALJ found; instead, it would result in finding *less severe* conditions.

*   *   *

Accordingly, for the reasons explained, the Commissioner's decision is AFFIRMED.

February 15, 2011.



_____
SIDNEY A. FITZWATER
CHIEF JUDGE